1  Eric J. Benink, Esq., SBN 187434
   Vincent D. Slavens, Esq., SBN 217132
2  KRAUSE KALFAYAN BENINK & SLAVENS, LLP
   625 Broadway, Suite 635
3  San Diego, CA 92101
   Tel:   (619) 232-0331
4  Fax:   (619) 232-4019

FILED

DEC 1 4 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

5  Attorneys for Plaintiff Legacy Trading Group, LLC and the Putative Class

6

7

8                      UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

LEGACY   TRADING  GROUP,  LLC,  a  ) Case No. 07 CV 2344 L RBB
10 California  limited  liability  company,  )
   individually and on behalf of all others similarly  ) **COMPLAINT  FOR  TEMPORARY**
11 situated,                                  ) **RESTRAINING   ORDER   AND**
                                             ) **PRELIMINARY INJUNCTION**
12                            Plaintiff,     )
                                             )
13          v.                               ) [CLASS ACTION]
                                             )
14 UNICO, INC., an Arizona corporation,      )
                                             )
15                            Defendant.     )
                                             )
16 _____   )

17          Plaintiff Legacy Trading Group, LLC, by and through its attorneys, on behalf of itself and

18 all others similarly situated, alleges upon personal knowledge as to itself and its acts stated herein,

19 and as to all other matters upon information and belief based upon, *inter alia*, the investigation made

20 by its attorneys, as follows:

21                                    I.
                        **JURISDICTION AND VENUE**
22
23          1.  This Court has subject matter jurisdiction over this matter pursuant to Section 27 of the

24 Securities Exchange Act of 1934 (15 U.S.C. § 78aa) and 15 U.S.C. § 1367(a).

25          2.  Defendant Unico, Inc.'s principal place of business is in the County of San Diego, State

26 of California. Venue is proper in this district under 28 U.S.C. Section 1391(b)(1), (2), and (3).

27

28

                                        1

## II.
## PARTIES

3.   Plaintiff Legacy Trading Group, LLC is a California limited liability company and owns 5,562,269 shares of Unico, Inc. common stock.

4.   Defendant Unico, Inc. is an Arizona corporation with its principal place of business in San Diego, California. It is a publicly traded company and a reporting company with the Securities and Exchange Commission ("SEC"). Its shares are registered pursuant to Section 12(g) of the Securities and Exchange Act and trade on the Over the Counter Bulletin Board under the ticker symbol UCOI.OB.

## III.
## SUBSTANTIVE ALLEGATIONS

5.   On November 20, 2007 Unico filed a Definitive Proxy Statement with the SEC. (Attached hereto as Ex. A.) The Proxy Statement discloses that Unico will hold a special shareholders meeting on December 21, 2007 in San Diego, California at which time, the shareholders will vote on a reverse stock split. (Ex. A, pg. 4.)

6.   According to the Proxy Statement, an approval of the reverse split will enable Unico to effect, during a six month period, a reserve stock split whereby every 500 currently outstanding shares would be exchanged for one new share. (Ex. A, pg. 9.)

7.   A reverse stock split has two devastating consequences. First, because it has no effect on the number of *authorized* shares, which is currently 5 billion, it is probable that new shares will be issued, which would severely dilute the current shareholder's interests. In fact, the Proxy Statement references the likelihood of this occurrence. (Ex. A. p. 10)  There are 4,815,363,072 shares issued and outstanding and 184,636,928 shares authorized by unissued. As shown on page 10 of the Proxy Statement, a 500-1 split, would have the following effect on the current common shareholders:

|  | Issued and Outstanding | Authorized, but not Issued |
|---|---|---|
| Current | 4,815,363,072 (96.3%) | 184,636,928 (3.7%) |
| Post-Split | 9,630,726 (0.2%) | 4,990,369,273 (99.8 %) |

In other words, current common shareholders would go from owning 96% of the authorized

1  shares, to less than 1% of the authorized shares.

2      8.   Second, the reserve split is an undeserved boon to the five directors.  According to the

3  Proxy Statement, the five Unico directors own 9,300,000 Series A Preferred shares representing 95%

4  of the designated Series A Preferred shares.  (Ex. A, pg. 19.)  The Series A are convertible into

5  shares of common stock on a one for one (1:1) basis.  (Ex. A., p. 14.)  This ratio will not change

6  following the reverse split!  Thus, following the reverse split, the board members will be able to

7  convert into common shares as follows:

8  

| | Common Shares | Total Outstanding post Conversion | Percentage |
|---|---|---|---|
| Current | 9,300,000 | 4,824,663,072 | **0.2 %** |
| Post-Split | 9,300,000 | 18,930,726 | **49%** |

11      In other words, by way of this reverse split, the board goes from 1% ownership of the

12  common stock to nearly 50% of the common shares if they so choose to convert.

13      9.   Unfortunately, Unico has not given the shareholders notification of the Special

14  Shareholder Meeting in violation of Section 14(a) of the Securities Exchange Act of 1934 and in

15  violation of Arizona corporation law.

16      10.  Plaintiff seeks, on behalf of a class of Unico, Inc. common shareholders, a temporary

17  restraining order and preliminary and permanent injunction to enjoin Unico's holding of the Special

18  Shareholders Meeting on December 21, 2007 or alternatively to enjoin the implementation of the

19  reserve stock split until proper notice has been given to all the shareholders.

20                                    **IV.**
                              **CLASS ALLEGATIONS**
21

22      11.  Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(b)(2) on

   behalf of the following Class:
23

24      All Unico, Inc. common shareholders, who were shareholders entitled to vote at
        Unico's December 21, 2007 Special Shareholder meeting, excluding Unico, Inc.'s
25      directors, officers, and employee, or legal representatives.

26      12.  There are thousands of putative class members across the United States, and the

27  world, who meet the class definition and joinder of all such putative class members would be

28  impracticable.

3

1        13.    There are questions of law and fact common to the class.

2        14.    Plaintiff's claims are typical of the claims of the members of the Class.

3        15.    Plaintiff will fairly and adequately protect the interests of the members of the Class

4    and Plaintiff has no interest which is contrary to or in conflict with those of the Class members he

5    seeks to represent.  Plaintiff has retained competent counsel experienced in class action litigation to

6    further ensure such protection and he intends to prosecute this action vigorously.

7        16.    Defendant has acted in manner that is generally applicable to the Class, thereby

8    making  the injunctive relief sought in this matter appropriate with respect to the class as a whole.

9

10                                            **IV.**
                              **FIRST CLAIM FOR RELIEF**
11                                **FOR VIOLATION OF**
         **SECTION 14(A) and (C) OF THE SECURITIES EXCHANGE ACT OF 1934**
12                       **AND RULES PROMULGATED THEREUNDER**

13        17.   Each of the foregoing paragraphs are incorporated herein by reference as though fully

14    set forth herein.

15        18.   Unico is subject to the Section 14(a) of the Securities Exchange Act (15 U.S.C § 78n)

16    and the rules promulgated thereunder, Rule 14a. (17 CFR 240.14a-1 - 14a-15.)

17        19.   Section 14(a) states that it is unlawful for any person to solicit any proxy in

18    contravention of the rules and regulations as the Securities and Exchange Commission may

19    prescribe.

20        20.   Rule 14a-3(a) states that no solicitation subject to this regulation shall be made unless

21    each person solicited is concurrently furnished or has previously been furnished with a written proxy

22    statement containing the information specified in Schedule 14A (17 CFR 240.14a-101.)

23        21.   Section 14(c) states that even when no proxy solicitation is made (which is not the case

24    here), prior to an annual or special meeting, the securities issuer must nevertheless provide

25    information similar to that which would have been required had a solicitation been made to all

26    securities holders.

27        22.   Rule 14c-2 (17 CFR 240.14c-2(a) and (b)) state that in connection with every annual

28    or other meeitng of the holders of the class of securities registered pursuant to section 12 of the Act,

4

the registrant shall transmit a written information statement containing information specified in Sechedule 14C (17 CFR 240.14c-101) and that such information statement must be sent or given at least 20 calendar days prior to the meeting date.

23.  No information statement has been sent or given by Unico.

**V.**
**SECOND CLAIM FOR RELIEF**
**VIOLATION OF**
**ARIZ. REV. STAT. § 10-705**

24.  Each of the foregoing paragraphs are incorporated herein by reference as though fully set forth herein.

25.  Ariz. Rev. Stat. § 10-705 states, in pertinent part,

Notice of meeting
A.  A corporation shall notify shareholders of the date, time and place of each annual and special shareholders' meeting at least ten but not more than sixty days before the meeting date.  Unless chapters 1 through 17 of this title or the articles of incorporation require otherwise, the corporation is required to give notice only to shareholders entitled to vote at the meeting.

26.    Unico, Inc. has failed to notify Plaintiff and the Class of the date, time and place of the proposed December 21, 2007 Special Shareholder Meeting in violation of Arizona law.

27.    The Class will be irreparably harmed if the December 21, 2007 meeting takes place without first providing proper notice.

**VI.**
**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays as follows, on behalf of itself and the Class.

1.  For a  temporary restraining order and preliminary and permanent injunction enjoining the December 21, 2007 meeting, or alternatively;

2  For a temporary retraining order and preliminary and permanent injunction enjoining Unico from effecting the reserve split;

3.  For costs of the suit; and

1        4.  For any further relief that the Court may deem necessary and proper.

2

3

4  DATED: __12/14/07__

                KRAUSE    KALFAYAN    BENINK &
5                      SLAVENS, LLP

6

7

8                  Eric J. Benink
                      Attorney for Plaintiff and the Class

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF 14A 1 f08162.htm OTHER DEFINITIVE PROXY STATEMENTS

## UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

SCHEDULE 14A
(Rule 14(a)-101)

INFORMATION REQUIRED IN PROXY STATEMENT

SCHEDULE 14A INFORMATION

Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 .

Filed by the registrant [X]
Filed by a party other than the registrant [ ]

Check the appropriate box:

[ ] Preliminary proxy statement.
[ ] Confidential, for use of the
    Commission only (as permitted by
    Rule 14a-6(e)(2)).
[X] Definitive proxy statement.
[ ] Definitive additional materials.
[ ] Soliciting material pursuant to Section 240.14a-12

UNICO, INCORPORATED

---

(Name of Registrant as Specified in Its Charter)

---

(Name of Person(s) Filing Proxy Statement if Other Than the Registrant)

Payment of filing fee (check the appropriate box):
[X] No fee required.
[ ] Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

(1) Title of each class of securities to which transaction applies:

---

(2) Aggregate number of securities to which transaction applies:

---

(3) Per unit price or other underlying value of transaction computed pursuant
    to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is
    calculated and state how it was determined):

---

(4) Proposed maximum aggregate value of transaction:

---

(5) Total fee paid:

---

[ ] Fee paid previously with preliminary materials.

---

[ ] Check box if any part of the fee is offset as provided by Exchange Act Rule
    0-11(a)(2) and identify the filing for which the offsetting fee was paid
    previously. Identify the previous filing by registration statement number,

or the form or schedule and the date of its filing.

(1) Amount Previously Paid:

_____

(2) Form, Schedule or Registration Statement No.:

_____

(3) Filing Party:

_____

(4) Date Filed:

_____

_____

UNICO, INCORPORATED
8880 Rio San Diego Drive, 8th Floor
San Diego, California   92108
(619) 209-6124

NOTICE OF SPECIAL MEETING OF SHAREHOLDERS
TO BE HELD ON DECEMBER 21, 2007

Dear Shareholders:

A special meeting of shareholders of Unico, Incorporated, an Arizona corporation (the "Company"), will be held on December 21, 2007 at 10:00 a.m. local time, at the Hilton San Diego Mission Valley, 901 Camino del Rio South, San Diego, California, 92108  for the following purpose:

|  | RECOMMENDED VOTE |
|---|---|
| To consider and vote upon a proposal to amend the Company's Articles of Incorporation to authorize the Board of Directors, in its discretion, to effect a reverse stock split of the Company's Common Stock at a ratio of up to one-for-five hundred during the six month period following the date of the Special Meeting of Shareholders. | FOR |

Only shareholders of record shown on the books of Unico at the close of business on November 19, 2007 will be entitled to vote at the meeting or any adjournment thereof.  Each shareholder is entitled to one vote per share on all matters to be voted on at the meeting.

You are cordially invited to attend the meeting.  Whether or not you plan to attend the meeting, please sign, date and return your proxy in the return envelope provided as soon as possible.  Please mail your completed and signed proxy before December 15, 2007 so that we will receive it prior to the special meeting of shareholders.  Your cooperation in promptly signing and returning your proxy will help avoid further solicitation expense to Unico.

This notice, the proxy statement and the enclosed proxy are sent to you by order of the board of directors.

*/s/ Mark A. Lopez*
Mark A. Lopez
*Chief Executive Officer*


San Diego, CA
November 27, 2007

4

UNICO, INCORPORATED,
an Arizona corporation

PROXY STATEMENT
FOR
SPECIAL MEETING OF SHAREHOLDERS
TO BE HELD DECEMBER 21, 2007

### INTRODUCTION

Your proxy is solicited by the board of directors of Unico, Incorporated, an Arizona corporation ("Unico" or the "Company") for use at a special meeting of shareholders to be held on December 21, 2007, and at any adjournment thereof, for the purposes set forth in the attached notice of special meeting.

The cost of soliciting proxies, including preparing, assembling and mailing the proxies and soliciting material, will be borne by Unico. Directors, officers, and regular employees of Unico may, without compensation other than their regular compensation, solicit proxies personally, by telephone or electronic communication including facsimile and electronic mail.

Any shareholder giving a proxy may revoke it at any time prior to its use at the meeting by giving written notice of such revocation to the Secretary or other officer of Unico or by filing a new written proxy with an officer of Unico. Personal attendance at the meeting is not, by itself, sufficient to revoke a proxy unless written notice of the revocation or a subsequent proxy is delivered to an officer before the revoked or superseded proxy is used at the meeting.

Proxies not revoked will be voted in accordance with the choice specified by means of the ballot provided on the proxy for that purpose. Proxies which are signed but which lack any such specification will, subject to the following, be voted in favor of the proposals set forth in the notice of special meeting. If a shareholder abstains from voting as to any matter, then the shares held by such shareholder shall be deemed present at the meeting for purposes of determining a quorum and for purposes of calculating the vote with respect to such matter, but shall not be deemed to have been voted in favor of such matter. Abstentions, therefore, as to any proposal will have the same effect as votes against such proposal. If a broker returns a "non-vote" proxy, indicating a lack of voting instruction by the beneficial holder of the shares and lack of discretionary authority on the part of the broker to vote on a particular matter, then the shares covered by such non-vote shall be deemed present at the meeting for purposes of determining a quorum but shall not be deemed to be represented at the meeting for purposes of calculating the vote required for approval of such matter.

The mailing address of Unico's principal executive office is 8880 Rio San Diego Drive, 8th Floor, San Diego, California 92108. This proxy statement and the related proxy and notice of the special meeting will first be mailed to the shareholders on or about November 27, 2007.

VOTING RIGHTS AND REQUIREMENTS

## VOTING SECURITIES

Unico's Board of Directors has fixed November 19, 2007 as the "Record Date" for determining shareholders entitled to vote at the special meeting. Persons who were not shareholders of record at the close of business on such date will not be allowed to vote at the special meeting.  At the close of business on the Record Date, there were approximately 4,815,363,072 shares of Unico's Common Stock and 9,800,000 shares of Unico's Series A Preferred Stock issued and outstanding.  Common Stock has 1 vote per share and Series A Preferred Stock has no voting rights, except for the election of two directors.

Votes cast by proxy or in person at the special meeting will be tabulated by Mark Lopez who has been appointed as the inspector of election prior to the special meeting.  He will also determine whether a quorum is present.  In the event of any abstentions or broker non-votes with respect to any proposal coming before the special meeting, a proxy will be counted as present for purposes of determining the existence of a quorum.  Abstentions and broker non-votes typically will not be counted for purposes of approving any of the matters to be acted upon at the special meeting.  A broker non-vote generally occurs when a broker or nominee who holds shares in street name for a customer does not have authority to vote on certain non-routine matters because its customer has not provided any voting instructions on the matter.  Therefore, abstentions and broker non-votes generally have no effect under Arizona law with respect to the election of directors or other matters requiring the approval of only a majority of the shares of common stock present and voting at the meeting.

## REVOCABILITY OF PROXY

You may revoke your proxy at any time prior to the start of our special meeting in three ways:

1.  by delivering a written notice of revocation to Mr. Mark Lopez, the Chief Executive Officer of Unico, at 8880 Rio San Diego Drive, 8th Floor, San Diego, California  92108;

2.  by submitting a duly executed proxy bearing a later date; or

3.  by attending our special meeting and expressing the desire to vote your common shares in person (attendance at our special meeting will not in and of itself revoke a proxy).

## DISSENTERS - RIGHTS OF APPRAISALS

Under Arizona law, shareholders of our common stock are not entitled to dissenter's rights of appraisal with respect to our proposal.

## QUORUM

The presence (in person or by proxy) at the special meeting of the holders of a number of shares of our Common Stock representing more than 2,407,681,537 votes (in excess of one-half of the number of votes eligible to be voted at the special meeting) will constitute a quorum for transacting business.

VOTE REQUIRED

We are required to obtain the affirmative vote of at least a majority of the voting shares that are present or represented at the special meeting in order to effect the shareholder approval described herein.

BOARD RECOMMENDATIONS - INSIDERS' INTENT TO VOTE IN FAVOR

Our Board of Directors has determined that each of the proposals is in the best interests of the Company and our shareholders. Accordingly, the Board of Directors has unanimously approved each proposal and recommends that the shareholders vote in favor of each proposal as well.

Members of our board of directors collectively own 19,228,629 shares of Unico's common stock, or approximately 0.4% of the votes entitled to be cast at the special meeting. They have indicated their intentions to vote their shares in favor of each proposal.

MATTER TO BE ACTED UPON

INFORMATION REGARDING THE PROPOSAL

AMENDMENT OF ARTICLES OF INCORPORATION TO EFFECT A REVERSE STOCK SPLIT

The proposal to amend the Company's Articles of Incorporation is described below. A copy of the proposed amendment to the Company's Articles of Incorporation is attached to this proxy statement as Exhibit A.

Purpose: The Board of Directors may effect a reverse stock split anytime during the six months following the date of the Special Meeting of Shareholders based upon any ratio up to a maximum ratio of one-for-five hundred, with the exact ratio to be established within this range by the Board of Directors in its sole discretion at the time it elects to effect the split. The Board of Directors believes that the Reverse Split is in the Company's best interests in that it may increase the trading price of the Common Stock. An increase in the price of the Common Stock should, in turn, generate greater investor interest in the Common Stock, thereby enhancing the marketability of the Common Stock to the financial community. In addition, the resulting reduction in the number of issued and outstanding shares of Common Stock, while keeping the number of authorized shares of Common Stock at 5,000,000,000 shares, will provide the Company with additional authorized but unissued shares which could be utilized for future fundraising, acquisitions or mergers or to otherwise carry out the Company's business objectives.

Effect: Although the Reverse Split may increase the market price of the Common Stock, the actual effect of the Reverse Split on the market price cannot be predicted. The market price of the Common Stock may not rise in proportion to the reduction in the number of shares outstanding as a result of the Reverse Split. Further, there is no assurance that the Reverse Split will lead to a sustained increase in the market price of the Common Stock. The market price of the Common Stock may also change as a result of other unrelated factors, including the Company's operating performance and other factors related to its business as well as general market conditions. The Reverse Split will affect all of the holders of the Company's Common Stock uniformly and will not affect any shareholder's percentage ownership interest in the Company or proportionate voting power, except for insignificant changes that will result from the rounding of fractional shares either up or

down (see discussion below). However, because the conversion ratio of the Company's convertible preferred stock will not be affected by the reverse stock split, the current Common Stock holders will be diluted at different levels depending on the actual ratio of the reverse split. A greater ratio of the reverse split will result in greater actual dilution to current Common Stock shareholders. The following table reflects the effect of various ratios of reverse stock splits on the current shareholders. Information with respect to shares issuable upon conversion of convertible debentures is based upon the closing price of the Common Stock as of November 8, 2007.

| Reverse Ratio | Resulting Shares Issued & Outstanding | Reserved for Issuance | Authorized but Unreserved(1) |
|---|---|---|---|
| 1-for-25 | 192,614,523 | 2,103,428 | 4,805,282,049 |
| 1-for-50 | 96,307,261 | 1,051,714 | 4,902,641,025 |
| 1-for-75 | 64,204,841 | 701,143 | 4,935,094,016 |
| 1-for 100 | 48,153,631 | 525,857 | 4,951,320,512 |
| 1-for 200 | 24,076,815 | 262,929 | 4,975,660,256 |
| 1-for 500 | 9,630,726 | 105,171 | 4,990,264,102 |
| Current | 4,815,363,072 | 52,585,700 | 132,051,228 |

The reverse stock split will provide the Company with available shares which could be issued for various corporate purposes, including acquisitions, stock dividends, stock splits, stock options, convertible debt and equity financings, as the Board of Directors determines in its discretion. The Board further believes that the increase in the number of authorized shares of Common Stock will enable the Company to promptly take advantage of market conditions and the availability of favorable opportunities without the delay and expense associated with holding a special meeting of shareholders. The Company presently has no specific plans, arrangements or understandings, either written or oral, to issue any of the additional authorized shares of Common Stock, except that: (a) the Company presently has outstanding certain convertible debentures and 9,800,000 shares of Series A Preferred Stock, all of which are convertible to shares of the Company's Common Stock, and some or all of which may be converted to shares of the Company's Common Stock in the future; (b) the Company previously entered into stock payable agreements pursuant to which the Company received $999,000 and for which it is obligated to issue an aggregate of 42,785,700 shares of Common Stock, and (c) the Company intends to raise significant funds in the future to be used to support the operations of the Company and its subsidiaries and possibly to exercise the option to acquire ownership of the Bromide Basin Mine, and the Company will likely issue a substantial number of the Company's shares of Common Stock for these purposes. Although the Company cannot at the present

time estimate the number of shares of Common Stock which it may issue in the future, the Company will require $835,000 in order to acquire ownership of the Bromide Basin Mine.  If the Company sold shares of Common Stock at the current market price of $0.0011 per share, an aggregate of 759,090,909 shares of Common Stock would need to be sold to raise $835,000.  The Company has no present plans or arrangement to make any such sales of Common Stock and any such sales could be on terms substantially different than a market price offering, which could result in substantially greater dilution to current shareholders.  With regard to other funds required to support the operations of the Company, the Company has no present plans, arrangements or agreements.

The increase in the number of shares of common stock authorized for issuance as a result of the reverse split could, under certain circumstances, be construed as having an anti-takeover effect. For example, in the event a person seeks to effect a change in the composition of our board of directors or contemplates a tender offer or other transaction involving the combination of the Company with another company, it may be possible for us to impede the attempt by issuing additional shares of common stock, thereby diluting the voting power of the other outstanding shares and increasing the potential cost to acquire control of the Company. By potentially discouraging initiation of any such unsolicited takeover attempt, the increased number of authorized shares of Common Stock may limit the opportunity for our stockholders to dispose of their shares at the higher price generally available in takeover attempts or that may be available under a merger proposal. The amendment may also have the effect of permitting our current management, including our board of directors, to retain its position indefinitely and place it in a better position to resist changes that stockholders may wish to make if they are dissatisfied with the conduct of our business.

Procedure for Effecting Reverse Split: The Reverse Split of the Company's Common Stock will become effective at the discretion of the Board of Directors on any date designated by the Board of Directors (the "Effective Date") within six months following the date of the Special Meeting of Shareholders. The Reverse Split will take place on the Effective Date without any additional action on the part of the holders of the Common Stock and without regard to current certificates representing shares of Common Stock being physically surrendered for certificates representing the number of shares of Common Stock each shareholder is entitled to receive as a result of the Reverse Split. New certificates of Common Stock will not be issued.

Fractional Shares: No fractional shares will be issued in connection with the Reverse Split. Shareholders who would otherwise be entitled to receive fractional shares because they hold a number of shares of Common Stock that is not evenly divisible by the ratio selected by the Board of Directors will receive an additional fractional share such that they receive an even number of shares.  For example, a shareholder who would be entitled to receive one-fourth of a share would instead receive one full additional share of Unico's common stock on the date that the Reverse Split is implemented.

Federal Income Tax Consequences of Reverse Split: The following summary of certain material federal income tax consequences of the Reverse Split does not purport to be a complete discussion of all of the possible federal income tax consequences and is included for general information only. Further, it does not address any state, local, foreign or other income tax consequences, nor does it address the tax consequences to shareholders that are subject to special tax rules, such as banks, insurance companies, regulated investment companies, personal holding companies, foreign entities, nonresident alien individuals, broker-dealers and tax-exempt entities. The discussion is based on the United States federal income tax laws as of the date of this Information Statement. Such laws are subject to change retroactively as well as prospectively. This summary also assumes that the shares of the Company's Common Stock are held as "capital assets," as defined in the Internal Revenue Code of 1986, as amended (i.e., generally, property held for investment). The tax treatment of a shareholder may vary depending on the facts and circumstances of such shareholder. EACH SHAREHOLDER IS URGED TO CONSULT WITH SUCH SHAREHOLDER'S TAX ADVISOR WITH RESPECT TO THE PARTICULAR TAX CONSEQUENCES OF THE REVERSE SPLIT.

No gain or loss should be recognized by a shareholder upon the shareholder's exchange of shares pursuant to the Reverse Split. The aggregate tax basis of the shares received in the Reverse Split will be the same as the shareholder's aggregate tax basis in the shares exchanged. The shareholder's holding period for the shares received in the Reverse Split will include the period during which the shareholder held the shares surrendered as a result of the Reverse Split. The Company's views regarding the tax consequences of the Reverse Split are not binding upon the Internal Revenue Service or the courts, and there is no assurance that the Internal Revenue Service or the courts would accept the positions expressed above. The state and local tax consequences of the Reverse Split may vary significantly as to each shareholder, depending on the state in which such shareholder resides.

No Dissenters' Rights: The holders of the Company's Common Stock are not entitled to dissenters' rights in connection with the Reverse Split. Furthermore, the Company does not intend to independently provide those shareholders with any such rights.

RECOMMENDATION OF THE BOARD OF DIRECTORS:  THE BOARD OF DIRECTORS RECOMMENDS A VOTE "FOR" THE AMENDMENT TO UNICO'S ARTICLES OF INCORPORATION TO AUTHORIZE THE BOARD OF DIRECTORS, IN ITS DISCRETION, TO EFFECT THE REVERSE SPLIT.

INTERESTS OF CERTAIN PERSONS IN THE PROPOSALS

No director, executive officer, associate of any director or executive officer or any other person has any substantial interest, direct or indirect, by security holdings or otherwise, in the proposal to amend the Articles of Incorporation to authorize the Board of Directors, in its discretion, to effect a reverse split of the Company's Common Stock which is not shared by all other holders of the Company's Common Stock with the exception that directors (who also serve as employees) and executive officers who hold shares of the Company's Series A Preferred Stock may benefit from a reverse split of the shares of the Company's Common Stock since each share of Series A Preferred Stock is convertible into shares of the Company's Common Stock on a one-for-one (1:1) basis, and the conversion ratio is not affected by forward or reverse stock splits of shares of the Common Stock.  See "Security Ownership of Certain Beneficial Owners and Management." Mark A. Lopez, C. Wayne Hartle and Ray Brown are each holders of shares of Series A Preferred Stock of the Company.  As such, they may benefit from a reverse split of the

14

shares of Common Stock.

16

17

DESCRIPTION OF CAPITAL STOCK

The authorized capital stock of the Company consists of the following:

COMMON STOCK

As of the Record Date, there were 5 billion shares of Common Stock authorized with a stated value of $0.001 per share, of which approximately 4,815,363,072 shares were issued and outstanding, with 184,636,928 shares authorized but unissued. Each holder of Unico's Common Stock is entitled to one vote for each share held of record on all matters submitted to the vote of stockholders, including the election of directors. All voting is non-cumulative, which means that the holder of fifty percent (50%) of the shares voting for the election of the directors can elect all the directors. The holders of Common Stock are entitled to receive pro rata dividends, when and as declared by the Board of Directors in its discretion, out of funds legally available therefore, but only if all dividends on the Preferred Stock have been paid in accordance with the terms of such Preferred Stock and there exists no deficiency in any sinking fund for the Preferred Stock.

Dividends on the Common Stock are declared by the Board of Directors. The payment of dividends on the Common Stock in the future, if any, will be subordinate to the Preferred Stock and will be determined by the Board of Directors. In addition, the payment of such dividends will depend on the Company's financial condition, results of operations, capital requirements and such other factors as the Board of Directors deems relevant.

PREFERRED STOCK

As of the Record Date, the Company has 20,000,000 shares of Preferred Stock designated. The Board of Directors has sole discretion in designating the preferences, limitations and relative rights of the Preferred Stock. The Company presently has one (1) class or series of Preferred Stock outstanding.

*Series A Preferred Stock* - The Company has ten million (10,000,000) shares of Series A Preferred Stock designated. Each share of Series A Preferred Stock is convertible into shares of the Company's Common Stock on a one-for-one (1:1) basis, and the conversion ratio is not affected by forward or reverse stock splits. The Series A Preferred Stock is non-interest bearing, does not have voting rights and is not entitled to receive dividends. In the event of a liquidation event, the Series A Preferred Stock automatically converts into Common Stock based on the foregoing formula. Holders of the Series A Preferred Stock are entitled to elect two (2) persons to the Company's Board of Directors. As of the Record Date, there were 9,800,000 shares of Series A Preferred Stock outstanding.

10

---

SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT

The following table sets forth, as of November 8, 2007 the beneficial ownership of the Company's Common Stock (i) by any person or group known by the Company to beneficially own more than 5% of the outstanding Common Stock, (ii) by each Director and executive officer and (iii) by all Directors and executive officers as a group. Unless otherwise indicated, the holders of the shares shown in the table have sole voting and investment power with respect to such shares. The address of all individuals for whom an address is not otherwise indicated is 8880 Rio San Diego Drive, 8th Floor, San Diego,

18

California 92108.

| Name and Address | Number of Shares Beneficially Owned | Class | Percentage of Class |
|---|---|---|---|
| Mark A. Lopez<br>Chief Executive Officer | 50,000<br>5,401,968 | Common<br>Series A Preferred | *<br>55% |
| Wayne Ash<br>President | 2,000 | Common | * |
| Wayne Hartle<br>Secretary and Director | 2,994,224<br>348,989 | Common<br>Series A Preferred | *<br>4% |
| Kenneth C. Wiedrich<br>Chief Financial Officer | 0 | Common | 0% |
| Ray Brown<br>Director | 16,227,474<br>3,549,043 | Common<br>Series A Preferred | *<br>36% |
| All directors and executive officers (5 persons) | 19,273,698<br>9,300,000 | Common<br>Series A Preferred | *%<br>95% |
| *Denotes less than 1% | | | |

This table is based upon information derived from our stock records. Unless otherwise indicated in the footnotes to this table and subject to community property laws where applicable, the Company believes that each of the shareholders named in this table has sole or shared voting and investment power with respect to the shares indicated as beneficially owned. Applicable percentages are based upon 4,815,363,072 shares of Common Stock and 9,800,000 shares of Series A Preferred Stock outstanding as of November 8, 2007.

### AVAILABLE INFORMATION

The Company is subject to the periodic reporting requirements of the Securities Exchange Act of 1934, as amended, and, in accordance therewith, files reports and other information with the Commission. Such reports and other information can be inspected and copied at the public reference facilities maintained by the Commission at 100 F Street, N.E., Washington, D.C. 20549, at prescribed rates. Please call the Commission at (202) 942-8090 for further information. Copies of such materials may also be accessed electronically by means of the Commission's home page on the Internet at "http://www.sec.gov."

### OTHER BUSINESS

The board of directors knows of no other matters to be presented at the special meeting.  If any other matter does properly come before the special meeting, the appointees named in the proxies will vote the proxies in accordance with their best judgment.

### SHAREHOLDER PROPOSALS

Proposals of shareholders that are intended to be presented at Unico's next annual meeting of shareholders must have been received by the Company not later than a reasonable time before Unico begins to print and mail its proxy materials under the provisions of Rule 14a-8 of the Securities Exchange Act of 1934.  Unico intends that its next annual meeting of shareholders shall be

19

held in July, 2008.

The person presiding at the next annual meeting of shareholders may refuse to permit to be brought before the meeting any shareholder proposal not made in compliance with Rule 14a-8.

## INFORMATION INCORPORATED BY REFERENCE

The SEC allows the Company to incorporate by reference information that the Company files with the SEC.  Unico incorporates by reference the information contained in Unico's Annual Report to Stockholders on Form 10-KSB for the fiscal year ended February 28, 2007 filed with the SEC on June 13, 2007 and mailed with this proxy statement.

THE COMPANY WILL FURNISH WITHOUT CHARGE A COPY OF ITS ANNUAL REPORT ON FORM 10-KSB FOR THE FISCAL YEAR ENDED FEBRUARY 28, 2007 TO ANY SHAREHOLDER OF THE COMPANY UPON WRITTEN REQUEST.  REQUESTS SHOULD BE SENT TO MARK A. LOPEZ, 8880 RIO SAN DIEGO DRIVE, 8TH FLOOR, SAN DIEGO, CALIFORNIA 92108.

## ANNUAL REPORT

A copy of Unico's Annual Report to Shareholders on Form 10-KSB for the fiscal year ended February 28, 2007, including financial statements, accompanies this notice of special meeting and proxy statement.

THE COMPANY WILL FURNISH WITHOUT CHARGE A COPY OF ITS ANNUAL REPORT ON FORM 10-KSB FOR THE FISCAL YEAR ENDED FEBRUARY 28, 2007 TO ANY SHAREHOLDER OF THE COMPANY UPON WRITTEN REQUEST.  REQUESTS SHOULD BE SENT TO MARK A. LOPEZ, 8880 RIO SAN DIEGO DRIVE, 8TH FLOOR, SAN DIEGO, CALIFORNIA  92108.

Dated: November 27, 2007
San Diego, California

12

20

UNICO, INCORPORATED

PROXY FOR SPECIAL MEETING TO BE HELD ON DECEMBER 21, 2007
THIS PROXY IS SOLICITED ON BEHALF OF THE BOARD OF DIRECTORS

The undersigned hereby appoints Mark A. Lopez as proxy, with the power to
appoint their substitute(s), to represent and to vote all the shares of
common stock of Unico, Incorporated, an Arizona corporation (the "Company"),
which the undersigned would be entitled to vote, at Unico's special meeting
of stockholders to be held on December 21, 2007 and at any adjournments
thereof, subject to the directions indicated on the reverse side hereof.

In their discretion, the proxy is authorized to vote upon any other matter
that may properly come before the meeting or any adjournments thereof.

THIS PROXY WILL BE VOTED IN ACCORDANCE WITH THE SPECIFICATIONS MADE, BUT IF
NO CHOICES ARE INDICATED, THIS PROXY WILL BE VOTED FOR THE PROPOSAL LISTED ON
THE REVERSE SIDE.

IMPORTANT--This Proxy must be signed and dated on the reverse side.

13

21

SPECIAL MEETING OF SHAREHOLDERS OF
UNICO, INCORPORATED

December 21, 2007

THIS IS YOUR PROXY
YOUR VOTE IS IMPORTANT!

Dear Stockholder:

We cordially invite you to attend the Special Meeting of Stockholders of Unico, Incorporated to be held at 10:00 a.m. local time on December 21, 2007, at the Hilton San Diego Mission Valley, 901 Camino del Rio South, San Diego, California, 92108 . Please read the proxy statement which describes the proposals and presents other important information, and complete, sign and return your proxy promptly in the enclosed envelope.

THE BOARD OF DIRECTORS RECOMMENDS A VOTE FOR THE PROPOSALS

PLEASE SIGN, DATE AND RETURN PROMPTLY IN THE ENCLOSED ENVELOPE.
PLEASE MARK YOUR VOTE IN BLUE OR BLACK INK AS SHOWN HERE [x]

|  |  | FOR | AGAINST | ABSTAIN |
|---|---|---|---|---|
| 1. | Proposal to authorize the Board of Directors, in its discretion, to effect a reverse stock split of the Company's Common Stock at a ratio of up to one-for-five hundred during the six month period following the vote of the Special Meeting of Shareholders. | [_] | [_] | [_] |

2. To transact such other business as may properly come before the special meeting and any adjournment or adjournments thereof.

   The board of directors recommends you vote "FOR" the above proposal.

This proxy when properly executed will be voted in the manner directed above. In the absence of direction for the above proposal, this proxy will be voted "FOR" that proposal. Other matters: in their discretion, the appointed proxies are authorized to vote upon such other business as may properly come before the meeting.

If you plan to attend the special meeting of shareholders, please mark this box [_]

Dated:_____, 2007

SIGNATURE _____

NAME (PRINTED) _____

TITLE _____

22

Important: Please sign exactly as name appears on this proxy. When signing as attorney, executor, trustee, guardian, corporate officer, etc., please indicate full title.

24

EXHIBIT "A"

ARTICLES OF AMENDMENT
to the
ARTICLES OF INCORPORATION
of
UNICO, INCORPORATED

Pursuant to the provisions of the Arizona Code, the undersigned corporation adopts the following Articles of Amendment to its Articles of Incorporation:

FIRST:  The name of the corporation is Unico, Incorporated.

[Paragraph "SECOND" below, shall only be completed and included if and when Unico's Board of Directors adopts a Reverse Split.]

SECOND:  That the presently issued and outstanding Common Stock of the corporation, $.001 par value, shall, at __:__ a.m., Eastern Time, on _____, 2008 (the "Effective Time"), be deemed to be "reverse split," and in the furtherance thereof, there shall, after the Effective Time, be deemed to be issued and outstanding one (1) share of the Common Stock of the Corporation for and instead of each _____ (_) shares of the Common Stock of the Corporation issued and outstanding immediately prior to the Effective Time.  To the extent that any shareholder shall be deemed after the Effective Time as a result of this Amendment to own a fractional share of Common Stock, such fractional share shall be deemed to be one whole share.  Each shareholder of record as of the Effective Time shall be entitled to receive from the Corporation's transfer agent a certificate representing the number of shares of the Common Stock to which such shareholder is entitled hereunder upon delivery to the Corporation's transfer agent of a certificate or certificates representing the number of shares owned by such shareholder of record as of the Effective Time.

THIRD:  The foregoing amendment was adopted by the vote of the shareholders on December 21, 2007.

FOURTH:  The number of shares of the Corporation outstanding at the time of such adoption was 4,815,363,072 common shares (1 vote per share) and 9,800,000 Series A Preferred Shares (non-voting); and the number of shares entitled to vote thereon was 4,815,363,072. The number of shares indisputably represented at the meeting where the vote occurred was [_____].

FIFTH:  The number of shares voted for such amendment was [_____]; and the number of shares voted against such amendment was [_____].  [_____] shares abstained.  The number of shares voted for the amendment was sufficient for approval of the amendment.

SIXTH: The foregoing amendment does not effect an exchange, reclassification or cancellation of shares.
SEVENTH: The amount of stated capital after the amendment is $_____.

Dated this _____ day of _____, 2008
UNICO, INCORPORATED

By _____
Its Chief Executive Officer

26

and _____
                               Its Secretary

STATE OF CALIFORNIA      )
                         : ss.
COUNTY OF SAN DIEGO      )

      I, _____, Notary Public, do hereby certify that on this __, day of _____, 2008 personally appeared before me Mark A. Lopez who being by me first duly sworn, declared that he is the Chief Executive Officer of Unico, Incorporated, that he signed the foregoing document as Chief Executive Officer of the Corporation, and that the statements therein contained are true.

                        _____
                        Notary Public
                        Residing at: _____
                        My Commission Expires: _____

SEC\0816.1

27

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
LEGACY TRADING GROUP, LLC

**DEFENDANTS**
UNICO, INC.

DEC 1 4 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT COURT

**(b)** County of Residence of First Listed Plaintiff    **Sonoma County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    San Diego County
(IN U.S. PLAINTIFF CASES ONLY)    by ____ DEPUTY
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Krause, Kalfayan, Benink & Slavens, LLP, 625 Broadway, Suite 635, San Diego, CA 92101    Tel: (619) 232-0331

Attorneys (If Known)

**'07 CV 2344 L RBB**

| **II. BASIS OF JURISDICTION** (Place an "X" in One Box Only) | | **III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) |
|---|---|---|

(For Diversity Cases Only)

| | | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|
| ❏ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | ❏ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| ❏ 2 U.S. Government Defendant | ❏ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| | | Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 610 Agriculture | ❏ 422 Appeal 28 USC 158 | ❏ 400 State Reapportionment |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 362 Personal Injury — Med. Malpractice | ❏ 620 Other Food & Drug | ❏ 423 Withdrawal 28 USC 157 | ❏ 410 Antitrust |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 365 Personal Injury — Product Liability | ❏ 625 Drug Related Seizure of Property 21 USC 881 | | ❏ 430 Banks and Banking |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | ❏ 368 Asbestos Personal Injury Product Liability | ❏ 630 Liquor Laws | **PROPERTY RIGHTS** | ❏ 450 Commerce |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | | ❏ 640 R.R. & Truck | ❏ 820 Copyrights | ❏ 460 Deportation |
| ❏ 151 Medicare Act | ❏ 340 Marine | **PERSONAL PROPERTY** | ❏ 650 Airline Regs. | ❏ 830 Patent | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ❏ 345 Marine Product Liability | ❏ 370 Other Fraud | ❏ 660 Occupational Safety/Health | ❏ 840 Trademark | ❏ 480 Consumer Credit |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 371 Truth in Lending | ❏ 690 Other | **SOCIAL SECURITY** | ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 380 Other Personal Property Damage | **LABOR** | ❏ 861 HIA (1395ff) | ❏ 810 Selective Service |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 385 Property Damage Product Liability | ❏ 710 Fair Labor Standards Act | ❏ 862 Black Lung (923) | ☒ 850 Securities/Commodities/Exchange |
| ❏ 195 Contract Product Liability | | | ❏ 720 Labor/Mgmt. Relations | ❏ 863 DIWC/DIWW (405(g)) | ❏ 875 Customer Challenge 12 USC 3410 |
| ❏ 196 Franchise | | | ❏ 730 Labor/Mgmt.Reporting & Disclosure Act | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| ❏ 210 Land Condemnation | ❏ 441 Voting | ❏ 510 Motions to Vacate Sentence | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❏ 892 Economic Stabilization Act |
| ❏ 220 Foreclosure | ❏ 442 Employment | **Habeas Corpus:** | ❏ 791 Empl. Ret. Inc. Security Act | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 893 Environmental Matters |
| ❏ 230 Rent Lease & Ejectment | ❏ 443 Housing/Accommodations | ❏ 530 General | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 894 Energy Allocation Act |
| ❏ 240 Torts to Land | ❏ 444 Welfare | ❏ 535 Death Penalty | | | ❏ 895 Freedom of Information Act |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 540 Mandamus & Other | | | ❏ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | ❏ 550 Civil Rights | | | ❏ 950 Constitutionality of State Statutes |
| | ❏ 440 Other Civil Rights | ❏ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

| ☒ 1 Original Proceeding | ❏ 2 Removed from State Court | ❏ 3 Remanded from Appellate Court | ❏ 4 Reinstated or Reopened | ❏ 5 Transferred from another district (specify) | ❏ 6 Multidistrict Litigation | ❏ 7 Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. § 78n
Brief description of cause: Plaintiff's complaint alleges violation of the Securities Exchange Act of 1934 for Defendant's failure to give shareholders notice of Special Shareholder Meeting.

**VII. REQUESTED IN COMPLAINT:**    ☒ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND:    ❏ Yes    ☒ No

**VIII. RELATED CASE(S) IF ANY**    (See instructions):    JUDGE    DOCKET NUMBER

DATE
12/14/2007

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 145581    AMOUNT $350    12/17/07 BH    APPLYING IFP    JUDGE    MAG. JUDGE

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

## # 145581    — BH

## December 17, 2007
## 09:04:55

## Civ Fil Non-Pris
USAO #.: 07CV2344 CIVIL FILING
Judge..: M. JAMES LORENZ
Amount.:                    $350.00 CK
Check#.: BC# 2335

## Total-> $350.00

FROM: CIVIL FILING
      LEGACY TRADING V. UNICO INC.