Eric J. Benink, Esq., SBN 187434
Vincent D. Slavens, Esq., SBN 217132
KRAUSE KALFAYAN BENINK & SLAVENS, LLP
625 Broadway, Suite 635
San Diego, CA 92101
Tel:   (619) 232-0331
Fax:  (619) 232-4019

Attorneys for Plaintiff Legacy Trading Group, LLC and the Putative Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LEGACY TRADING GROUP, LLC, a California limited liability company, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNICO, INC., an Arizona corporation,

Defendant.

Case No. 07 CV 2344 L RBB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

DATE:
TIME:
DEPT:

## I. INTRODUCTION

Plaintiff Legacy Trading Group, LLC seeks, on behalf of itself and a class of common shareholders, a temporary restraining order to enjoin defendant Unico, Inc. ("Unico"), a publicly-traded company with shares registered with the Securities and Exchange Commission ("SEC"), from holding a special shareholder meeting on December 21, 2007. Unico is intending to put forth a vote on an amendment to its Articles of Incorporation to authorize a reverse stock split, which would substantially enrich Unico's board members. But the shareholders have received no notice of the special meeting in violation of the federal securities laws and Arizona corporation law.

## II. FACTS

Plaintiff owns 5,562,269 common shares of Unico. (Declaration of Michael Maselli ("Maselli") ¶ 2.) On November 20, 2007 Unico filed a Schedule 14A Definitive Proxy Statement

1

1   with the SEC. (Complaint, Ex. A.) The Proxy Statement discloses that Unico will hold a special
2   shareholders meeting on December 21, 2007 in San Diego, California at which time, the
3   shareholders will vote on an amendment to the Articles of Incorporation to effect a reverse stock
4   split. (*Id.*, pg. 4.)

5   According to the Proxy Statement, an approval of the reverse split will enable Unico to
6   effect, during a six month period, a reserve stock split whereby every 500 currently outstanding
7   shares would be exchanged for one new share. (*Id.*, pg. 9.)

8   A reverse stock split has two devastating consequences. First, because it has no effect on the
9   number of *authorized* shares, which is currently 5 billion, it is probable that new shares will be
10  issued, which would severely dilute the current shareholder's interests. In fact, the Proxy Statement
11  references the likelihood of this occurrence. (*Id.* pg. 10.)

12  There are 4,815,363,072 shares issued and outstanding and 184,636,928 shares authorized
13  by unissued. As shown on page 10 of the Proxy Statement, a 500-1 split, would have the following
14  effect on the current common shareholders:

| | Issued and Outstanding | Authorized, but not Issued |
|---|---|---|
| Current | 4,815,363,072 (96.3%) | 184,636,928 (3.7%) |
| Post-Split | 9,630,726 (0.2%) | 4,990,369,273 (99.8 %) |

18  In other words, current common shareholders would go from owning 96% of the authorized
19  shares, to less than 1% of the authorized shares.

20  Second, the reserve split is an undeserved boon to the five directors. According to the Proxy
21  Statement, the five Unico directors own 9,300,000 Series A Preferred shares representing 95% of
22  the designated Series A Preferred shares. (*Id.* pg. 19.) The Series A are convertible into shares of
23  common stock on a one for one (1:1) basis. (*Id.*, pg. 14.) This conversion ratio will not change
24  following the reverse split! Thus, following the reverse split, the board members will be able to
25  convert into common shares as follows:

| | Common Shares | Total Outstanding post Conversion | Percentage |
|---|---|---|---|
| Current | 9,300,000 | 4,824,663,072 | **0.2 %** |
| Post-Split | 9,300,000 | 18,930,726 | **49%** |

2

In other words, by way of this reverse split, the board goes from 1% ownership of the common stock to nearly 50% of the common shares if they so choose to convert. Thus, the board members have every incentive to ram this vote through and it seems implausible that common shareholders, if properly notified of this vote, would approve such an action.

Unfortunately, neither Plaintiff, nor most of the other common shareholders with whom it has discussed this matter, have received the Proxy Statement or any other notification of the board meeting. (Maselli, ¶¶ 5, 7.) It appears that Unico's management is attempting to ram this reverse split through without apprizing all of the shareholders of the impending meeting.

## III.
## ARGUMENT

### A. THE COURT HAS JURISDICTION TO HEAR THIS MATTER

Plaintiff alleges violation of Section 14(a) of the Securities Exchange Act of 1934 (the "Act") and violation of Arizona corporation law. Section 27 of the Act, 15 U.S.C. § 78aa, provides that:

> The district courts of the United Sates and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules or regulations thereunder.

The Court may also exercise supplemental jurisdiction over the state law claim (failure to give notice of the shareholder meeting) because it is derived from a common nucleus of operative facts supporting the federal claims. See 15 U.S.C. 1367(a); Lyon v. Whisman (3rd. Cir 1995) 45 F.3d. 758.

### B. PRIVATE RIGHT OF ACTION EXISTS FOR VIOLATION OF SECTION 14(A)

A private right of action exists for violation of Section 14(a). *J.I. Case Co. v. Borak* (1964) 377 U.S. 426 ("It appears clear that private parties have a right under § 27 to bring suit for violation of § 14(a) of the Act.") *See also Ash v. GAF Corp.* (D.C. PA 1982) 546 F.Supp. 89, 92.

3

### C. POLICY UNDERLYING SECTION 14(A) IS TO SAFEGUARD CORPORATE SUFFRAGE OF SHAREHOLDERS

Section 14(a) of the Act and the rule promulgated thereunder are designed to prevent management from obtaining authorization of corporate action through inadequate disclosures in proxy solicitation and to "safeguard the corporate suffrage of shareholders." *Ash v. GAF Corp.* (D.C. PA 1982) 546 F.Supp. 89, 92. See also *J.I. Case Co. v. Borak* (1964) 377 U.S. 426 (discussing with regard to Section 14(a), congressional belief that 'fair corporate suffrage is an important right that should attach to every equity security brought on a public exchange.'")

### D. UNICO IS ATTEMPTING TO THWART SHAREHOLDERS FROM EXERCISING THEIR VOTING RIGHTS IN VIOLATION OF SECTION 14(a) AND ARIZONA LAW

Unico filed a Definitive Proxy Statement on November 20, 2007 with the Securities and Exchange Commission. Plaintiff, the owner of 5,562,269 common shares, never received a copy of the Proxy Statement, the attached Proxy, or the Notice of Meeting of Shareholders from Unico. After communicating with 91 other shareholders, only five reported to Legacy that they had received the Proxy Statement from Unico related to the proposed December 21, 2007 meeting. (Maselli, ¶ 7.) Eleven common shareholders have likewise confirmed that they have not received any notifications. (See Declarations of Juanita Ikuta, Geoff Schodde, F. Richardson, Jr., Gerald Kramer, Cameron Bibkreli, Nicholas Reeder, Blaine Anderson, William Graham, J. G. Gies, Steven Cox, and Brian Hernon filed herewith.)

**1. Unico has violated Section 14(a) and Rule 14a-3**

The solicitation of proxies is governed by Rule 14a of the Act (15 U.S.C. § 78n) when the proxy solicitation relates to shares registered pursuant to section 12 of the Act. Unico's shares are registered pursuant to section 12(g). Therefore, Unico's proxy solicitations are subject to Section 14(a) and the rules promulgated thereunder, Rule 14a. (17 CFR 240.14a-1 - 14a-15.)

Section 14(a) states that it is unlawful for any person to solicit any proxy in contravention of the rules and regulations as the Securities and Exchange Commission may prescribe. Rule 14a-3 states that no solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with a written proxy statement containing

1  the information specified in Schedule 14A (17 CFR 240.14a-101.)

2  As shown above, common shareholders have not received the Proxy statement in violation
3  of Rule 14a-3.

5  **2. Alternatively, Unico has violated Section 14(c) and Rule 14c-**

6  Section 14(c) of the Act also states that even when no proxy solicitation is made (which is
7  not the case here), prior to an annual or special meeting, the securities issuer must nevertheless
8  provide information similar which would have been required had a proxy solicitation been made to
9  all securities holders.

10  Rule 14c-2(a) and (b) (17 CFR 240.14c-2(a) and (b) state that in connection with every
11  annual or other meeting of the holders of the class of securities registered pursuant to section 12 of
12  the Act, the registrant shall transmit a written information statement containing information specified
13  in Sechedule 14C (17 CFR 240.14c-101) and that such information statement must be sent or given
14  at least 20 calendar days prior to the meeting date.

15  The common shareholders have not received any such information statement.

16  **3. Unico has violated Arizona corporations law**

17  In addition to the violation of federal securities law, Unico's failure to notify shareholders
18  of the December 21, 2007 special board meeting violates Ariz. Rev. Stat. § 10-705 which states, in
19  pertinent part,

20  Notice of meeting
    A. A corporation shall notify shareholders of the date, time and place of each annual
21  and special shareholders' meeting at least ten but not more than sixty days before the
    meeting date.  Unless chapters 1 through 17 of this title or the articles of
22  incorporation require otherwise, the corporation is required to give notice only to
    shareholders entitled to vote at the meeting.
23

24  **E. TEMPORARY RESTRAINING ORDER IS APPROPRIATE**

25  Traditionally, where the moving party establishes the following factors, it is proper for a
26  court to enter a temporary restraining order: (1) a strong likelihood of success on the merits, (2) the
27  possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of
28  hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). *Dollar*

*Rent A Car of Washington, Inc. v. Travelers Indem. Co.* (9th Cir.1985) 774 F.2d 1371, 1374-1375 (*quoting Sierra Club v. Hathaway*, 579 F.2d 1162, 1167 (9th Cir.1978)). In making this determination, the Court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. . ." *Amoco Production Co. v. Village of Gambell, Alaska* (1987) 480 U.S. 531, 542; *see also, Dogloo, Inc. v. Doskocil Mfg. Co., Inc.* (C. D. Cal. 1995) 893 F.Supp. 911, 917.

Here, each of these factors are easily satisfied. Eleven shareholders have reported that they have not received the Proxy Statement or any other shareholder notification of the board meeting and Legacy, who has been investigating this issue, reports that only 5 of the 91 shareholders with whom it has communicated have reported receipt of the material. Thus, the failure to deliver notification does not appear to be an isolated event, but rather, an intentional and wide-spread act. The intentionality is underscored by the fact that the proposed action is a boon to the Board of Directors. Plaintiff is likely to prevail on the merits.

The irreparable injury will be substantial if a temporary restraining order is not immediately entered. Once the reverse split is consummated, the effect on the price of the shares might be impacted. This is admitted by Unico in its Proxy Statement:

> Although the Reverse Split may increase the market price of the Common Stock, the actual effect of the Reverse Split on the market price cannot be predicted. The market price of the Common Stock may not rise in proportion to the reduction in the number of shares outstanding as a result of the Reverse Split

Post-split shares will be exchanged in the public market making it impossible to unwind these transactions if, at a later time, the reverse split is deemed to be illegally authorized.

Furthermore, the board members will be able to convert their preferred shares into common shares and could potentially unload those shares into the public market greatly affecting the share price. The reverse split also opens to door to the possibility that additional shares will be issued to raise new capital, which will be impossible to reverse at a future time as well.

Plaintiff's and the class' hardships described above are immense. Unico, on the other hand, has little to lose by postponing the Shareholder Meeting until a preliminary injunction hearing on this matter is heard.

Finally, the public interest will be served. The public markets and shareholder rights are fundamentally important to our national economy. Confidence in those markets are critical. *See U.S. v. O'Hagan*, 521 U.S. 642, 658 (holding that "animating purpose" of the Exchange Act is to "ensure honest securities markets and thereby promote investor confidence.")

### F. NO BOND OR ONLY A NOMINAL BOND IS REQUIRED

Despite Fed. Rule Civ. Proc. 65's requirement that no restraining order shall issue except upon the giving of security by the applicant, it is within the federal court's discretion to set the amount of the bond, and to determine that no amount of bond is required under the circumstances. *See, Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, (9th Cir. 2003) 321 F.3d 878, 882 (finding that "[t]he district court is afforded wide discretion in setting the amount of the bond . . . and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction."); *see also, Corning Inc. v. PicVue Electronics, Ltd.*, (2nd Cir. 2004) 365 F. 3d 156 (finding that its is within a court's discretion not to require a bond, so long as the court considers the issue); *Doctor's Associates, Inc. v. Stuart*, (2nd Cir. 1996) 85 F. 3d 975. Indeed, where the moving party merely seeks to preserve the status quo, no amount of bond should be required. *See, Laster v. District of Columbia*, (D.D.C. 2006) 439 F. Supp. 2d 93, 100 at n. 7 (citing *Connecticut General Life Ins. Co., supra*).

Here, preserving the status quo for a few weeks will not harm Unico. Plaintiff respectfully requests that the bond be set at zero or some other nominal amount, like $500.

### IV.
### CONCLUSION

For each of the foregoing reasons, Plaintiff respectfully requests that a temporary restraining order in the proposed order submitted herewith, be entered by the Court and that the court issue an Order to Show Cause why a preliminary injunction should not be issued.

DATED: 12-14-07

KRAUSE KALFAYAN BENINK & SLAVENS, LLP

Eric J. Benink
Attorney for Plaintiff and the Class

7