Daniel J. Navigato, Esq. (SBN 164233)
Michael W. Battin, Esq. (SBN 183870)
NAVIGATO & BATTIN, LLP
501 West Broadway, Suite 2060
San Diego, California 92101
Tel. (619) 233-5365
Fax (619) 233-3268

Attorneys for Defendant UNICO, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGACY TRADING GROUP, LLC, a California limited liability company, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>UNICO, INC., an Arizona corporation,<br><br>     Defendant.<br>_____ | CASE NO.: 07CV2344L(RBB)<br><br>**DEFENDANT UNICO, INC'S OPPOSITION TO PLAINTIFF LEGACY TRADING GROUP, LLC'S APPLICATION FOR PRELIMINARY INJUNCTION**<br><br><u>Hearing</u><br>DATE:     January 7, 2008<br>TIME:     10:30 a.m.<br>CTRM:    14 |

Defendant UNICO, INC. ("Unico" or "Defendant") hereby respectfully submits the following Opposition to Plaintiff LEGACY TRADING GROUP, LLC'S ("Plaintiff") Ex Parte Application for Preliminary Injunction ("Application").

## I. INTRODUCTION

On November 20, 2007, Unico filed a Definitive Proxy Statement with the Securities and Exchange Commission disclosing that a special shareholders' meeting would be held on December 21, 2007, at which time shareholders would vote on whether to amend Unico's Articles of Incorporation to authorize the Board of Directors to effectuate a reverse stock split. The reverse stock split has been proposed as a means to create desperately needed capital in an

effort to save a corporation facing substantial debt. The reverse stock split would not only enable Unico to address its outstanding liabilities but would also allow Unico to generate the capital needed to continue its corporate functions. However, in an effort to stifle the reverse stock split and promote its personal agenda, Plaintiff filed an Application seeking to restrain Unico from holding its duly scheduled meeting. In its Application, Plaintiff attempts to establish that shareholders had not received proper notice of the special meeting. As demonstrated herein, proper notice was in fact given. Thus, Plaintiff's Application must be denied.

## II.  ARGUMENT

**A.     THE APPLICATION IS MOOT**

In its Application, Plaintiff principally requests that the December 21, 2007 special shareholders' meeting not be held. See Plaintiff's Ex Parte Application for Temporary Restraining Order, on file herein. In its Order granting the TRO, the Court found that Plaintiff "will suffer irreparable harm if the Special Meeting for Shareholders is held on December 21, 2007..." See Order Granting *Ex Parte* Application for TRO, on file herein. As a result, the Court ordered that Defendant is "**ENJOINED** and **RESTRAINED** from holding a Special Meeting of the shareholders on December 21, 2007, or at any other time until the preliminary injunction hearing in this matter is heard." Id.

It is undisputed that the December 21, 2007 special shareholders' meeting was not held. It is also undisputed, and reflected in both the moving papers and the official transcript, that the *only* legal basis for Plaintiff's Application is a purported violation of technical notice requirements – in regards to the December 21, 2007 special shareholders' meeting. Further, it is undisputed that no meeting has or will occur before the preliminary injunction hearing. Finally, the special shareholders' meeting has been rescheduled and any issues with the previous notice are now irrelevant. Thus, there is no future action requested to be enjoined, since the December 21, 2007 already did not happen, and the Application must be denied as moot.

/////

/////

/////

### B. UNICO HAS COMPLIED WITH ALL FEDERAL AND STATE NOTICE REQUIREMENTS

Plaintiff alleges that Unico did not provide written proxy materials to shareholders in connection with the December 21, 2007 special shareholders' meeting (the "Meeting"), in violation of Rule 14(a)-3 of the Securities Exchange Act of 1934 (hereafter, "Rule 14a-3"). Rule 14(a)-3 provides in pertinent part that "[n]o solicitation shall be made unless each person solicited is concurrently furnished or has previously been furnished with [a] publicly-filed or definitive written proxy statement...." 17 CFR 240.14c-3.

Plaintiff also complains that Unico failed to timely notify shareholders of the Meeting, in violation of Section 10-705 of the Arizona Revised Statutes (hereafter, "Section 10-705"). Section 10-705 reads, in pertinent part:

> A corporation shall notify shareholders of the date, time and place of each annual and special shareholders' meeting at least ten but not more than sixty days before the meeting date. Unless chapters 1 through 17 of this title or the articles of incorporation require otherwise, the corporation is required to give notice only to shareholders entitled to vote at the meeting.

Ariz. Rev. Stat. § 10-705.

As detailed below, Unico satisfied both Rule 14a-3 and Section 10-705. As such, the instant Application must be denied.

#### 1. Unico Furnished Proxy Materials to Unico Shareholders, as Required by Rule 14a-3

Unico complied with Rule 14a-3 by furnishing to all Unico shareholders the proxy materials required by Rule 14a-3. Specifically, Unico employed two companies to furnish proxy materials to record and beneficial owners of Unico shares. Unico hired Transfer Online, Inc. ("Transfer Online") to mail notice and proxy materials to all Unico shareholders of record, other than beneficial owners. See Declaration of Mark Knight filed herewith ("Knight Decl."), ¶ 4. Unico hired Broadridge Financial Solutions, Inc. ("Broadridge") to mail notice and proxy materials to beneficial owners of Unico shares. See Declaration of Mark Lopez filed herewith ("Lopez Decl."), ¶ 5.

/////

On December 3, 2007, Transfer Online mailed notice of the Meeting along with proxy materials to all Unico shareholders of record as of November 19, 2007, other than beneficial owners, . See Knight Decl., ¶ 5. A true and accurate copy of the materials sent by Transfer Online is attached as Exhibit B. Transfer Online handles shareholder records for all of Unico's shareholders of record. See Knight Decl., ¶ 3. Transfer Online generated a list of all Unico shareholders of record on November 19, 2007 and subsequently mailed notice and proxy materials to all such shareholders. See Knight Decl., ¶ 6. A true and accurate copy of the list of all Unico shareholders of record as of November 19, 2007 is attached as Exhibit A.

On December 6, 2007, Broadridge mailed notice of the Meeting along with proxy materials to beneficial owners of Unico shares ("Beneficial Owners"). See Affidavit of Mailing filed herewith. A copy of all materials mailed by Broadridge is attached as Exhibit G. Due to the combined efforts of Transfer Online and Broadridge, as detailed above, Unico complied fully with the notice requirements of Rule 14(a)-3.

**2.     Unico Provided Notice of the Meeting, as Required by Section 10-705**

First, it must be noted that all that is required under Arizona corporate law is that the corporation *mail* notice to shareholders. Section 10-141(C) of the Arizona Revised Statutes states that "[w]ritten notice by a domestic or foreign corporation to its shareholders ... is effective when mailed...." Ariz. Rev. Stat.§10-141. Thus, in order establish compliance with notice requirements, Unico must only show that notice of the Meeting and proxy materials were timely *mailed* to all shareholders entitled to vote – not that each and every shareholder *actually received* notice.

Second, as detailed in section II(B)(1) above, through the efforts of its transfer agents, Unico provided notice of the Meeting within the time required by Section 10-705. The Definitive Proxy Statement furnished to both shareholders of record and beneficial owners contains a Notice of Special Meeting of Shareholders. See Exh. B, p.3; see also Exh. G. The Notice contains the date, time, and place of the meeting, and a description of the purpose for which the meeting was called, as required by Section 10-705. Id. Transfer Online mailed the proxy statement (containing the notice) on December 3, 2007; Broadridge mailed the proxy

statement (containing the notice) on December 6, 2007.  Therefore, Unico complied with Section 10-705 and the instant Application must be denied.

### 3. Unico's Efforts Resulted in over 3.84 Billion Shares Being Voted Prior to the Meeting, Including Votes from at Least 6 of the 13 Shareholders Who Signed Declarations Claiming Not to Have Received Timely Notice of the Meeting

As additional proof that notice of the Meeting and proxy materials were sent to shareholders as required, as of the time of the Meeting, 3,843,350,730 shares had been voted, amounting to 80.06% of all outstanding shares entitled to vote.  See Knight Decl., ¶ 10.  This number includes votes received from both record shareholders and Beneficial Owners.  See Knight Decl., ¶ 8-9.  Included in the 3,843,350,730 shares voted, were votes received from at least 6 of the 13 shareholders who signed declarations in support of Plaintiff's Application claiming that they did not receive proper notice prior to the Meeting date.  See Exhibit C, filed herewith; Cf. Declarations of William Graham, Mike Maselli, Brian Hernon, Steven Cox, Blaine Anderson, and F. Richardson, Jr., filed in support of Plaintiff's Application.

Further, a 7th declarant, John Geist, informed Mark Lopez, Unico's CEO, that he had in fact received notice of the Meeting and proxy materials prior to signing his declaration in which he stated the opposite under penalty of perjury.  See Lopez Decl., ¶ 8.  Therefore, given the fact that the vast majority of shares were voted and the fact that almost half of the Plaintiff's declarants voted their shares (and another admits receiving the proxy materials), the evidence demonstrates that proper notice was given.

### C. PLAINTIFF WILL SUFFER NO IRREPARABLE HARM IF THE SHAREHOLDER MEETING IS HELD

#### 1. Plaintiff Would Not Have Suffered Any Harm Had the Meeting Been Held

"The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803 (1982); see also Stanley v. University of So. Calif., 13 F.3d 1313, 1320 (9th Cir. 1994).  In addition, however, applications for *preliminary* relief (temporary restraining orders and preliminary injunctions) must meet additional criteria.  One of these criteria is a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied.  Raich v. Ashcroft, 352 F.3d

1222, 1227 (9th Cir. 2003). The movant must clearly establish this criteria in order to be entitled to preliminary injunctive relief. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). Because preliminary injunctive relief is an extraordinary remedy, courts require the movant to carry its burden of persuasion by a "clear showing." See Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865, 1867 (1997); see also City of Angoon v. Marsh, 749 F.2d 1413, 1415 (9th Cir. 1984).

Here, Plaintiff has failed to establish by competent evidence the presence of any irreparable harm. In its Application, Plaintiff argues that irreparable harm will result if the Meeting goes (or, at this point, had gone) forward due to the potential results the meeting may produce.[1] See Plaintiff's Memorandum of Points and Authorities in Support of Ex Parte Application for Temporary Restraining Order ("Points & Authorities"), p.6: 14-16, on file herein. It is true that, had the Meeting been allowed to proceed, it may have produced results that Plaintiff views as unfavorable; however, simply allowing the Meeting to go forward would not have harmed Plaintiff, as the results Plaintiff fears would have occurred whether Plaintiff received proper notice of the Meeting or not.

As previously cited, at the time the meeting was to be held, 3,843,350,730 shares had been voted, which amounts to 80.06% of all outstanding shares entitled to vote, see Knight Decl. ¶ 10. Thus, a quorum was established, authorizing the Meeting to go forward. Further, of the votes received, 2,240,898,153, or 58%, were cast in favor of the reverse stock split. Id. Thus, even if Plaintiff's allegations are true and a small faction of shareholders did not *actually receive* proper notice (though notice was *mailed*), there is no harm as a result. Enough votes have already been cast to establish a quorum and 58% percent of those votes favored authorization of a reverse stock split. Assuming the remaining shares had voted similarly, the proposed amendment would have passed. Further, it has been established that at least 6 of the 11 shareholders claiming not to have received notice have actually voted, meaning that their influence on the vote

---

[1] Specifically, Plaintiff states that (1) "Once the reverse split is consummated, the effect on the price of the shares might be impacted" (2) "Post-split shares will be exchanged in the public market making it impossible to unwind these transactions...." and (3) additional shares may be issued to raise capital which cannot be reversed. See Points & Authorities, p.6: 19-24.

has been felt, proper notice or not. Simply, the "harm" that Plaintiff cites is not related to any allegedly insufficient notice, as the necessary votes have already been cast by its fellow shareholders.

### 2. Since the December 21, 2007 Special Shareholders' Meeting Did Not Occur, Plaintiff Cannot Point to <u>Any</u> Irreparable Harm

Moreover, and more pragmatically for the instant Application, any perceived "harm" has been averted because *the December 21, 2007 meeting was not held*. Therefore, *a fortiori*, Plaintiff cannot complain of any harm arising from the lack of notice of that meeting.

## D. THREATENED INJURY TO PLAINTIFF IS GREATLY OUTWEIGHED BY DAMAGE THE INJUNCTION WILL CAUSE TO UNICO

Before a TRO or preliminary injunction may issue, the court must identify the harm that an injunction might cause the defendant and weigh it against plaintiff's threatened injury. <u>See</u> <u>Scotts Co. v. United Industries Corp.</u>, 315 F.3d 264, 284 (4th Cir. 2002). Where the harm to defendant substantially outweighs any injury threatened by defendant's conduct, plaintiff must make a stronger showing of likely success on the merits. <u>MacDonald v. Chicago Park Dist.</u>, 132 F.3d 355, 357 (7th Cir. 1997); <u>see</u> <u>Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler</u>, 305 F.Supp. 1210, 1216 (ND Cal. 1969) [where harm to defendant is great, injunctive relief should be denied absent "clearest" showing of probable success on the merits].

### 1. Threatened Injury to Plaintiff is Non-Existent

Here, as noted in Section A, above, the threatened injury has passed – the December 21st special shareholders' meeting was not held. Also, as demonstrated above and in the attached declarations, *at least 6 of the plaintiff's declarants voted* in relation to the December 21, 2007 meeting. Therefore, Plaintiff can hardly be heard to complain about alleged "irreparable" harm which at least 6 of its cohorts were apparently able to "repair."

### 2. Harm to Unico is significant

If the injunction is granted, Unico will suffer substantial damage. Unico is in dire need of capital in order payoff outstanding liabilities and survive as a corporation; however, Unico has yet to commence planned active mining operations, and thus is unable to generate sufficient

income without having authorized but unissued stock available. See Lopez Decl., ¶ 7.  If Unico is to survive as a corporation, the reverse stock split must be promptly authorized.

Unico needs money to secure the company's liabilities.  Currently, Unico has outstanding $5,769,080 worth of convertible debentures, the majority of which are in default. See Lopez Decl., ¶ 7(a).  Unico would need to issue roughly 13,893,969,000 shares if all of the convertible debentures were converted to shares of common stock. Id.  Unico will not be able to account for this liability if the reverse stock split is not authorized. Id. Unico also needs an estimated $3.5 million to support business operations over the next year. See Lopez Decl., ¶ 7(b).  Without a reverse stock split and with no currently active mining operations, there is no other way for Unico to raise such funds. See Lopez Decl., ¶ 7.  In the words of Unico's Chief Executive Officer, approval of the reverse stock split "is *essential* to the continued business of Unico." See Lopez Decl., ¶ 6.

**E.   UNICO IS ENTITLED TO DAMAGES RESULTING FROM THE RESTRAINING ORDER**

A wrongfully restrained party is entitled to recover proveable damages up to the amount of the bond. Nintendo of America, Inc. v. Lewis Galoob Toys, Inc. 16 F.3d 1032, 1036-1037(9th Cir. 1994).  Here, Plaintiff obtained an order restraining Unico from holding the special shareholder meeting on December 21, 2007.  As demonstrated above, Unico provided proper and timely notice.  Consequently, Unico was wrongfully restrained from conducting a duly noticed shareholder meeting.

Because Unico was prevented from holding the shareholder meeting as originally scheduled, it has been forced to reschedule the Meeting.  As a result, Unico has duplicated all of the efforts necessary for a publicly traded company to hold a special shareholder meeting it previously made in connection with the December 21, 2007 meeting.  Specifically, Unico prepared and filed a form 8-K Current Report announcing the postponement of the December 21, 2007 meeting. Lopez Decl. ¶ 9(f).  Unico prepared and filed a new Proxy Statement and Notice of Shareholder meeting. Id.   Unico has incurred approximately $2,880 in connection with these filings. Lopez Decl. Id. Unico has hired its transfer agents to notify all of the record and

1 beneficial owners of the rescheduled meeting at a cost of approximately $24,300. Lopez Decl. ¶ 9(b)-(d). Unico will again have to reserve a hotel room in which to hold the rescheduled meeting ($800) and issue a new press release regarding the rescheduled meeting ($225). Lopez Decl. ¶ 9(a) and (e).

The necessity of rescheduling the special shareholder meeting has cost Unico in excess of $27,900.00.[2] Since this amount exceeds the amount of the bond posted by Plaintiffs, Unico is entitled to have the entire bond executed. See <u>Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.</u> 16 F.3d 1032, 1036 (9th Cir. 1994).

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Application for Preliminary Injunction Order should be denied and the bond posted by Plaintiff should be executed in favor of Unico.

DATED: December 28, 2007          NAVIGATO & BATTIN, LLP

/s/
By:   Daniel J. Navigato
Attorneys for Defendant UNICO, INC.

---

[2] The above costs only include the out-of-pocket costs associated with re-noticing the shareholder meeting. In addition, Unico has suffered other substantial injury as a result of the order restraining it from holding its shareholder meeting on December 21, 2007. For example, Unico will suffer costs resulting from delays to Unico's mill and mining projects which will occur due to the fact that Unico will not have enough capital to go forward with these projects until the reverse stock split is authorized. Lopez Decl., ¶ 9(g).